## McCUTCHEN v. CRENSHAW.

1. LABOR CONTRACT—LIEN ON CROPS.—A contract required laborers to take in charge, plant, cultivate, and manure the several parcels of land designated by the landowner, according to the directions of the landowner and his agent, to house the crops, and see that no portion was removed until the owner had deducted for himself the amounts stated, and to be of good moral behavior, and respectful to the proprietor, his family, and agent. *Held*, that this contract did not create the relation of landlord and tenants, but of employer and laborers; that the laborers had no such interest in the soil or crops as would support a lien to a merchant for advances; and such a lien having been executed, and the crops made by one of these laborers seized thereunder, the landowner was entitled to recover the crop so seized. This case distinguished from Whaley *v.* Jacobson, 21 S. C., 59.

Before HUDSON, J., Sumter, April, 1893.

Action by James E. McCutchen against D. G. Crenshaw & Co. and E. Scott Carson, as sheriff, commenced about December 1, 1892. In his charge to the jury, the trial judge thus construed the written contract set out in the opinion of the court:

The contract between McCutchen and Adam Jefferson is a contract between employer and employee, between the farmer and the laborer on his farm. It is no contract of tenancy, and the contract in substance is this, so far as Adam Jefferson is concerned: I, McCutchen, make this contract with you, Jefferson, I put you on this land, and I put in a mule and furnish you to make the crop for me, and you must work it under my instruction and supervision; when you make that crop you be careful to hold it until I, McCutchen, have received out of the crops enough money to pay for all the advances I make to you and for the value of my land and my mule. I put in the land and put in a mule; you put in the labor to make the crop. All shall be yours after I have deducted enough to compensate me for my land and for my mule and advances. This is the contract of the owner of the land. He had a right to make this division for the parties working under this contract. It is not a contract of tenancy; it is a contract of employer and employee, between the farmer and laborer. That is the construction I give to you. If he had rented a piece of land, he had a right to give a lien to a merchant, but a laborer can't do this. This laborer did not have one particle of title to that crop until after that settlement and satisfied the debt of the employee; after settling with the landlord, he gets what is left. Crenshaw & Co. knew that he was on this land, knew it for several years. They knew he was working on this land, and Mr. McCutchen has the right to recover this crop from D. G. Crenshaw & Co. or receive the value thereof, unless something else happens to estop McCutchen. * * * I instruct you that under that written contract between McCutchen and Adam Jefferson, that they were laborers on his place; that they were not tenants, and they had no right to bind the crops. They can't bind the crop as against him. Jefferson had a right to give a lien to Crenshaw & Co. for his right and title in it, but until the crop was made and harvested and divided by McCutchen, it was McCutchen's property—

until the division was made and the advances paid. The lien given by Jefferson to Crenshaw & Co. was a nullity as against McCutchen; can't affect McCutchen unless he waived his right and authorized the party to give the lien to Crenshaw & Co.

Verdict was for plaintiff, and defendant appealed.

*Mr. A. B. Stuckey,* for appellants.

*Messrs. Haynsworth & Cooper,* contra.

March 5, 1894.   The opinion of the court was delivered by

Mr. Justice McGowan. This was an action for "claim and delivery" of certain personal property, farm products, viz: two bales of cotton, sixty-five bushels of corn, 800 pounds of fodder, &c., which were stored on the plantation of the plaintiff, and also 400 pounds of cotton in the seed, still ungathered in the field, amounting in value to about $170, which property the plaintiff claimed; but on November 4th, 1892, the same was seized and, as alleged, wrongfully taken from his possession by the defendants, D. G. Crenshaw & Co., who, by the aid of E. Scott Carson, as sheriff of Sumter County, still retain possession of the same, against the protest of the plaintiff, and to his damage $300. The defendants, D. G. Crenshaw & Co., answered, resisting the claim of the plaintiff, upon the ground, as they alleged, that one Adam Jefferson, as a tenant for the year 1892 on the farm of the plaintiff, McCutchen, on January 11, 1892, executed to them, the said defendants, a regular agricultural lien upon the entire crop which he should make in the said year, on the farm of the said McCutchen, leased to him as aforesaid, for the purpose and with the intent of securing any advances the said defendants might make to him during the year; that such advances were made to him, which have been paid in full. And as the property in question was said to be a part of the crop made by the said Jefferson in the year aforesaid, upon the farm of plaintiff, the said defendants procured an agricultural warrant to be issued, under which the proper officer of the law seized the property in question. And they deny that, in procuring that to be done, they committed any

33—40

wrongful act.   In answer to this view the plaintiff replied, insisting that Adam Jefferson was not, and never had been, his tenant on property leased to him; but, on the contrary, he was simply employed as a farm laborer for hire, and as such had no right to any part of the crop until it was gathered and a settlement made with his employer, so that he could neither take into his possession nor encumber the same.

The following is a copy of the agreement under which Jefferson worked on the plantation of the plaintiff in the year 1892:

"January 1, 1892.   Know all men by these presents, that the following articles of agreement have this day been entered into between J. E. McCutchen, of the first part, and the undersigned, of the second part.   We, the several undersigned, do obligate to take in charge the several plats or parcels of land to be designated by the above named J. E. McCutchen, of the first part, and to plant, cultivate, and manure said lands, according to his or his agent's directions.   We are to be of good moral behavior while on the place, and see that there is no disorderly conduct on said place.   We are to be respectful to the proprietor, his family, and agent.   We are to house in the best possible condition all of the several crops raised on said lands by us severally, and see that no portion thereof is removed from the place until after all advances made by him for us, and the several amounts opposite our respective names, is deducted by him therefrom.   In consideration of the above obligation being carried out in good faith, I, J. E. McCutchen, do agree to give unto the several parties the entire crops raised by them, after deductions of all advances made by me for them, and the amounts opposite each of their respective names.

"Marcus X York.   $90, also $25.
his
mark.

Carolina X Williams.   $122.

Ellie X Wilson.   $80 and $15, total $95.

Adam X Jefferson. $90, $25.

Sam. X McCray.   $90, $25.

Manson X Samson.   $75.

Butler X Ransom.   $93, $25.

Joe X Robinson.   $50, $25.

Driver X Robinson.    $50, $25.

Cato X English.    $70.

"Contract of J. E. McCutchen with the above named parties for the year 1892, from January 1st to December 31st."

The case came on to be heard before his honor, Judge Hudson, and a jury.   Under the charge of his honor, the jury found "for the plaintiff the property in dispute, and in case the property cannot be delivered, the sum of $144.93, the value thereof."

From this judgment the defendants appeal upon three grounds as follows: 1. Because his honor erred in charging the jury as follows: "It is not a contract of tenancy, it is a contract of employer and employee, between the farmer and the laborer.   If he had rented a piece of land, he would have a right to give a lien to a merchant, but a mere laborer can't do this.   This laborer did not have a particle of title to that crop until after that settlement and the satisfaction of the employer's debt." 2. Because his honor erred in charging the jury as follows: "Now in this case I instruct you, that under that written contract between McCutchen and Adam Jefferson, that they were non-tenants, and that they had no right to bind the crops. They can not bind the crops as against him.   Jefferson had a right to give a lien to Crenshaw and Co. for his right and title in it, but until the crop was made and harvested and divided by McCutchen, it was McCutchen's until the division was made and advances paid."   3. Because his honor erred in not holding that Adam Jefferson was "a cultivator of the soil," in the sense of the agricultural lien law in this State, and had such interest in the crop as gave him the right to bind it by an agricultural lien for supplies, and which being duly filed according to law, would be valid against any claim for supplies, under a contract not filed as required by law.

In the case of *Carpenter* v. *Strickland*, 20 S. C., 1, it was settled that, under our agricultural lien law, a contract to pay a farm laborer wages for his work, whether in money or a part of the crop, did not make him "a cultivator of the soil" in the sense of the act; that is to say, make him a tenant, with the right of exclusive possession and control within certain prescribed limits, and for a fixed period.   But, on the

contrary, the laborer in such case has no interest in the crop of the employer, which he can take into his possession or encumber until the crop is divided and the claims of the proprietor paid. See *Rogers* v. *Collier*, 2 Bail., 581; *Richey & Miller* v. *DuPre*, 20 S. C., 6; 4 Am. & Eng. Enc. Law, 887, 902, where, citing our cases of *Carpenter* v. *Strickland* and *Richey & Miller* v. *DuPre*, it is said: "One who is hired to work land, receiving for his compensation a part of the crop (land) is not a tenant; he has no estate in the land, but receives his share of its fruits as the price of his labor. The possession is still in the owner of the land; * * * the possession of the cropper being that of a servant, who gains no property in his share of the crop, until the division, which is made by the landlord," &c.

It was the duty of Judge Hudson to construe the written contract between the parties, and we concur in his construction. We agree that, under the contract of January 1, 1892, Adam Jefferson was not a tenant of any part of the plantation of McCutchen, so as to enable him to give a binding lien in advance upon any crops he might make during the year, but a mere farm laborer, working for hire. We think this case differs very materially in several respects from that of *Whaley* v. *Jacobson*, 21 S. C., 51, cited and relied upon by the defendant. It appears that the court hesitated in that case, and that the judgment, to a large extent, was induced by the facts, that the land claimed to be rented was particularly described and identified, and the period of time fixed, and the stipulations, that Middleton, the person claiming to be a tenant, was "to occupy during the year the premises now in his possession," and "to repair and keep in good condition the fences around the land," &c. It will be observed that there are no such stipulations in this contract; but, on the contrary, there are several which would seem to be inconsistent with the idea that Jefferson was lessee and proprietor of any part of the McCutchen plantation. These stipulations are well stated in the argument of respondent's counsel, as follows: (1) The contract required the laborers to take in charge the several parts or parcels of land, to be designated by McCutchen. (2) To plant, cultivate, and manure said lands, according to the direction of McCutchen or his agent.

(3) To house the crops and see that no portion thereof was removed until McCutchen had deducted for himself therefrom specific amounts. They were not to pay plaintiff and to retain balance, but plaintiff was to pay himself, and turn over the balance to them. (4) The requirements, that Jefferson and the others should be of good moral behavior while on the place, and should be respectful to the proprietor, his family, and agent, are distinct badges of a contract for service, and are entirely out of place in a lease, &c. We think it manifest that it was the intention of the parties that Mr. McCutchen should remain in possession of his own plantation as proprietor, and that the whole crop should be McCutchen's until all the sums provided for had been taken out by him.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.